J-S23036-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
                                                          :              PENNSYLVANIA
            Appellee                               :
                                                          :
               v.                                       :
                                                          :
RONALD A. WILLIAMS,                        :
                                                          :
            Appellant                             :   No. 1933 EDA 2014

Appeal from the PCRA Order Entered May 23, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-1201001-2002

BEFORE:    DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MAY 29, 2015**

Ronald A. Williams (Appellant) appeals from the order entered on May 23, 2014, which denied his motion for post-conviction DNA testing under Section 9543.1 of the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.[1]  Upon review, we affirm.

This Court previously summarized the background underlying this matter as follows:

---

[1]  On December 29, 2014, the Commonwealth of Pennsylvania (Commonwealth) filed a petition requesting an extension of time to file a brief.  This Court granted the Commonwealth's petition and directed that the brief be filed on or before March 2, 2015.  On March 2, 2015, the Commonwealth filed a second petition requesting an extension of time to file its brief, and the Court denied that petition.  The Commonwealth did not file its brief until May 1, 2015, and, as a consequence, this Court did not consider it in disposing of this appeal.  On May 8, 2015, Appellant filed a motion requesting an extension of time to file a reply brief.  Because this Court did not consider the Commonwealth's brief in disposing of this appeal, we deny Appellant's motion as moot.

*Retired Senior Judge assigned to the Superior Court.

On March 12, 2002, Beverly and Solomon Sacks were working together at Best Deal Discount Footwear ("the sneaker store") in Philadelphia. At approximately 6:30 p.m., a man, later identified as Appellant, entered the store, stood silently, and then exited. Ten minutes later, Appellant again entered the store, and this time pulled a gun from his jacket and pointed it at Mr. Sacks. Mr. Sacks told his wife to leave the store and call the police. Mrs. Sacks quickly exited the store and screamed for help. When police arrived, Mrs. Sacks and the officers entered the store to find Mr. Sacks suffering from a gunshot wound to the chest. Mr. Sacks told his wife that the intruder shot him and that he believed he was going to die. Mr. Sacks was transported to the University of Pennsylvania Hospital where he was pronounced dead at 7:14 p.m.

Police began their investigation, and interviewed several eyewitnesses. During the investigation, the eyewitnesses, Mrs. Sacks, Pedro Genas, and Edward Iezzi, all identified Appellant from photo arrays, but with various degrees of certainty. However, when the witnesses were asked to view a line-up on November 6, 2002, all of them identified Appellant as the man they had seen on the night in question.

Appellant was subsequently arrested, and the matter proceeded to a jury trial where Appellant was found guilty of second degree murder and robbery. The trial court sentenced Appellant to a term of life in prison on the murder bill, and the robbery conviction merged for sentencing purposes.

*Commonwealth v. Williams*, 909 A.2d 890 (Pa. Super. 2006) (unpublished memorandum at 1-2). Appellant filed a direct appeal, and this Court affirmed Appellant's judgment of sentence on August 24, 2006. *Id.* On February 28, 2007, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Williams*, 918 A.2d 745 (Pa. 2007).

Appellant filed a PCRA petition on July 2, 2007, and a motion for post-conviction DNA testing on September 22, 2008. The PCRA court formally dismissed the petition on December 12, 2008, and Appellant timely filed an appeal.[2] On February 9, 2010, this Court affirmed, and the Supreme Court denied Appellant's petition for allowance of appeal on September 15, 2010. **Commonwealth v. Williams**, 996 A.2d 18 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 8 A.3d 345 (Pa. 2010).

Appellant filed the instant motion for post-conviction DNA testing on November 14, 2013. Therein, Appellant sought "testing of the black jacket worn by the perpetrator which was recovered and subjected to DNA analysis by the Commonwealth, but not [through the use of] 'Touch DNA' analysis."[3] Appellant's Motion for Post-Conviction DNA Testing at 2. Appellant thus requested testing of the jacket using "the new, more advanced 'Touch DNA'" analysis. **Id.** On March 17, 2014, the Commonwealth filed a motion to dismiss. On May 1, 2014, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss Appellant's motion without a hearing. Appellant filed a response on May 20, 2014, and on May 23, 2014,

---

[2] It appears that the PCRA court also denied Appellant's motion for post-conviction DNA testing, but that Appellant did not seek appellate review of that decision.

[3] Importantly, the DNA testing that was conducted either excluded Appellant or yielded no DNA results or inconclusive DNA results. **Williams**, 996 A.2d 18 (unpublished memorandum at 12).

- 3 -

the PCRA court formally dismissed Appellant's motion. Appellant timely filed a notice of appeal.

Appellant presents the following issues for our consideration:

   I.     Whether the [PCRA court] applied the wrong standard of review to Appellant's motion for post-conviction DNA testing?

  II.     Whether the [PCRA court] erred in finding that [Appellant] was not entitled to post-conviction DNA testing when he was prepared to pay for the DNA testing and to have the results run through [the Combined DNA Index System (CODIS)] and the Pennsylvania data bank when there was a reasonable probability the testing would produce exculpatory evidence?

  III.    Whether the [PCRA court] erred in finding that there were no issues of material fact when the DNA testing, assuming exculpatory results, would make out a prima faci[e] case that [Appellant] is actually innocent of all charges?

  IV.    Whether the motion for post-conviction DNA testing was timely and the denial of the motion was a denial of Appellant's rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution?

Appellant's Brief at 2 (unnecessary capitalization omitted).

"Post[-]conviction DNA testing falls under the aegis of the [PCRA,] and thus, '[o]ur standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error.'" **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011) (footnote and citation omitted) (quoting **Commonwealth v. Brooks**, 875 A.2d 1141, 1144 (Pa. Super. 2005)).

Section 9543.1 of the PCRA provides, in relevant part, as follows:

**(a) Motion.--**

(1)    An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2)    The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\*\*\*

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\*\*\*

(3)    present a prima facie case demonstrating that the:

(i)    identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

- 5 -

> (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
>
>> (A) the applicant's actual innocence of the offense for which the applicant was convicted;
>
> ***
>
> **(d) Order.--**
>
> ***
>
> (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
>> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

"Thus, … on its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires that an appellant demonstrate that there is a reasonable possibility[] that favorable results of the requested DNA testing **would establish** the appellant's actual innocence of the crime of conviction." **Conway**, 14 A.3d at 109 (internal quotation marks omitted) (emphasis in original) (quoting **Brooks**, 875 A.2d at 1147). This Court has observed that the "actual innocence" standard mandates that

"newly discovered evidence … make it 'more likely than not that no reasonable juror would have found [an applicant] guilty beyond a reasonable doubt.' Thus, this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." **Conway**, 14 A.3d at 109 (quoting **Schlup v. Delo**, 513 U.S. 298, 327, 329 (1995)). Accordingly, the PCRA court must "review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence**." **Commonwealth v. Williams**, 35 A.3d 44, 50 (Pa. Super. 2011) (emphasis in original) (quoting **Commonwealth v. Smith**, 889 A.2d 582, 584 (Pa. Super. 2005)).

Notwithstanding the various arguments Appellant presents on appeal, we conclude that he is not entitled to relief. Put simply, Appellant has failed to establish that there is a reasonable possibility that favorable results of the requested DNA testing would establish his actual innocence. In this regard, Appellant alleged in his motion as follows:

> The Commonwealth should be ordered to perform "Touch DNA" testing. In the alternative, [Appellant] will pay for the testing to rule himself out as a contributor to DNA found on the jacket and to make clear that the samples that have previously been determined to be inconclusive, in fact, rule out [Appellant] as a contributor. He also requests that the DNA results obtained from the new, advanced testing and the old results be run through CODIS. [Appellant] believes that those results would exclude

him but might now identify the contributor of the DNA found on the coat. He is requesting that the fingerprints found at the murder scene also be run through CODIS. [Appellant] believes that there is a reasonable probability that the contributor of both the DNA and the source of the fingerprints would be found to be the same perso[n, but not Appellant,] and that person could be identified by running the new and old evidence through CODIS. This would be prima facie evidence of [Appellant's] actual innocence.

Appellant's Motion for Post-Conviction DNA Testing at 11.[4] Moreover, Appellant argues in his brief, *inter alia*, that "he is a victim of cross-racial misidentification," that the requested DNA testing will show his DNA is not on the jacket, and that "[t]he absence of DNA would surely create reasonable doubt in the mind of a juror." ***Id.*** at 24-25. We disagree.

In this Court's memorandum disposing of Appellant's first PCRA petition, wherein we rejected Appellant's claim that trial counsel was

---

[4] Appellant continued by asserting the same theories relied upon by the applicant in ***Conway*** in arguing that he is entitled to DNA testing, namely:

(1) a "redundancy" theory, which postulates that if the individual DNA tests reveal evidence of a third person on multiple items connected with the crime, then those "redundant" results would give rise to an inference of a separate assailant; (2) a "data bank" theory, which postulates that any DNA results that are obtained from DNA testing that prove the presence of an unknown person could be run through state and federal data banks for a match, which, if successful, would lead to the identification of a separate assailant; and (3) a "confession" theory, which postulates that an assailant who is discovered by using the data bank theory could, when confronted with the DNA evidence, confess to the crime.

***Conway***, 14 A.3d at 110.

ineffective for failing to request additional DNA testing, we explained as follows:

> Appellant contends trial counsel's failure to request funds for additional DNA testing constitutes deficient performance as there was no reasonable basis for not making the request. To the contrary, trial testimony revealed that twelve samples had been taken from the jacket and submitted for DNA testing. While six of those samples returned no DNA results or inconclusive DNA results, Appellant was excluded from the remaining six samples. As the complained of tests were inconclusive, there was strength in the argument that the prosecution's own DNA testing did not positively identify Appellant as the killer. Furthermore, there is just as reasonable a probability that additional testing would have revealed Appellant's DNA on the jacket as there is that it would have excluded him from the source of the samples. Also, assuming, *arguendo*, new DNA testing would have positively excluded Appellant, this fact alone does not necessarily lead to a not guilty verdict. As has been noted previously, three eyewitnesses identified Appellant as the shooter.

***Williams***, 996 A.2d 18 (unpublished memorandum at 12) (citations omitted).

We find the observations above to be particularly apt in the context of this matter and conclude that Appellant provides us no reason to reach a different conclusion. Appellant was convicted primarily on the basis of three eyewitness identifications in the face of DNA testing that failed to identify Appellant. Thus, even if the results of the requested DNA testing definitively excluded Appellant's DNA from the jacket, further confirmation of this absence does not enable Appellant to meet his burden. ***See Commonwealth v. Heilman***, 867 A.2d 542, 547 (Pa. Super. 2005) ("In

DNA as in other areas, an absence of evidence is not evidence of absence.").[5]   Moreover, even if the results of the requested DNA testing positively identified someone else's DNA on the jacket, Appellant fails to explain how that necessarily points to a different assailant.   Thus, it would not exculpate Appellant.   ***See Commonwealth v. Smith***, 889 A.2d 582, 585 (Pa. Super. 2005) ("Merely detecting DNA from another individual on the victim's fingernails, in the absence of any evidence as to how and when that DNA was deposited, would not exculpate appellant by pointing to a different assailant.").

As Appellant has failed to meet his prima facie burden under Section 9543.1 of the PCRA, the PCRA court did not err in denying his motion for post-conviction DNA testing.   Accordingly, we affirm the court's order.

Order affirmed.

---

[5] In fact, Appellant acknowledges that the forensic expert who performed the original DNA testing testified on behalf of the Commonwealth "that the fact that [Appellant's] DNA was not present in the samples did not mean that he did not touch the coat, but only that his DNA was not detected."  Appellant's Motion for Post-Conviction DNA Testing at 7 (emphasis omitted); Appellant's Brief at 9 (emphasis omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/29/2015