**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Eugene WATSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 29, 2007.

Filed June 1, 2007.

Reargument Denied Aug. 3, 2007.

Eugene Watson, appellant, Pro Se.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, KLEIN, and COLVILLE *, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is a *pro se* appeal from the order entered by the Court of Common Pleas of Philadelphia County on April 6, 2005, denying Appellant's request for DNA testing of several items of evidence under the Post–Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9543.1. We affirm.

¶ 2 On the night of December 6, 1979, B.M. heard her doorbell ring and someone tap on the front window of her apartment. On observing an individual, later identified as Appellant, standing at the vestibule door, she opened the door, at which time Appellant explained that he had left his keys in the upstairs apartment. As she

* Retired Senior Judge Assigned to the Superior Court.

led Appellant upstairs, he grabbed her from behind, dragged her into her apartment, and then blindfolded and raped her. He then fled the apartment.

¶ 3 On the night of July 30, 1980, J.E. was reading a book in her apartment when she observed that a window screen was dislodged and the window was opened wider than it had been. As she attempted to contact police, Appellant grabbed and blindfolded her. For three (3) terrifying hours, he forced her to have vaginal, oral, and anal intercourse. He then fled the apartment.

¶ 4 On the evening of September 9, 1981, C.S. was asleep in her apartment, when she was awoken by Appellant, who had broken into her apartment. After threatening to kill C.S. if she screamed or looked at him, Appellant covered her face with a pillowcase and proceeded to rape and sexually assault her; he then fell asleep. On observing this, C.S. went downstairs and contacted police. When police arrived, they found Appellant asleep and entirely naked in C.S.'s bed. He was arrested for the burglary and rape of C.S. On October 7, 1981, Appellant, while in custody for these offenses, was charged for the December 6, 1979 criminal trespass and rape of B.M. and the July 30, 1980 robbery and rape of J.E.

¶ 5 A jury trial was held in March, 1982, after which Appellant was convicted of robbery, involuntary deviate sex, and rape of C.S., and two (2) counts of burglary. Following the denial of post-verdict motions, he was sentenced to an aggregate seven and one-half (7½) to fifteen (15) year term of imprisonment. Appellant's judgment of sentence was affirmed by this Court on September 6, 1985.

¶ 6 In July, 1982, a consolidated jury trial was held for the crimes committed against B.M. and J.E. He was convicted of two (2) counts of rape, two (2) counts of simple assault, one (1) count of involuntary deviate sexual intercourse, and one (1) count of criminal trespass. On January 26, 1983, he was sentenced to an aggregate fifteen (15) to thirty (30) year term of imprisonment to run concurrently with the earlier sentence.

¶ 7 Appellant filed a motion to modify sentence, which was denied by the court on January 31, 1983. This Court affirmed the judgments of sentence on November 9, 1984, and the Supreme Court denied *allocatur* on July 29, 1985.

¶ 8 In December of 1985, Appellant filed his first petition for post-conviction relief. Following the appointment of counsel and the filing of a "no merit" letter, the court denied the petition for relief on March 10, 1987. This Court affirmed the denial on September 30, 1988.

¶ 9 On July 27, 1995, Appellant filed his second petition for post-conviction relief. The court denied the petition on September 13, 1995, and thereafter, this Court affirmed the denial on July 30, 1996, and the Supreme Court denied *allocatur* on February 20, 1997.

¶ 10 On October 16, 2002, Appellant filed the present "Petition for DNA Testing." Counsel was appointed and a "no merit" letter was filed. An evidentiary hearing was held, after which counsel informed the court in writing that the testimony presented at the hearing indicated that the evidence sought to be tested no longer existed. Counsel therefore indicated that Appellant's petition for testing should be deemed moot. On April 6, 2005, Appellant's request for post-conviction testing was denied and counsel was permitted to withdraw from the case. The present ap-

peal followed.[1,2]

¶ 11 Herein, Appellant presents the following questions for review:

## I

Did the court err when it denied the appellant's motion for DNA testing because the evidence was more than sufficient to prove the appellant's guilt beyond a reasonable doubt, when, in fact, sufficiency of the evidence is not a legally, sufficient reason to deny appellant's motion?

## II

Did the court err when it ruled that there was no reasonable probability that DNA evidence would produce exculpatory evidence showing appellant's innocence and denied the appellant's motion for DNA testing based on its finding that the evidence was destroyed prior to 2000, (a) since no evidence was introduced that would support such a finding of fact in regard to CP 1181–0367, the case in which [B.M.] and [J.E.] were the alleged victims; (b) if such evidence was furnished to the court it was presented ex parte and since appellant was not notified of or permitted to attend the hearings that were held, appellant's due process rights were violated; and (c) if the DNA evidence was destroyed prior to 2000, appellant's due process rights were violated since the court refused to hear evidence to determine if the Commonwealth acted in bad faith in destroying the DNA evidence?

Brief of Appellant at 3 (answers of trial court omitted).

1. Pursuant to the court's order to do so, Appellant filed a statement of matters complained of on appeal. To which the court issued an opinion in accordance with Pa. R.A.P. 1925(a).

¶ 12 Initially, we note that in reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. *Commonwealth v. Liebel*, 573 Pa. 375, 379, 825 A.2d 630, 632 (2003). Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. *Commonwealth v. McClellan*, 887 A.2d 291, 298 (Pa.Super.2005).

¶ 13 With regard to Appellant's claim that the court erred in denying his request for DNA testing, 42 Pa.C.S.A. § 9543.1(a) states, in pertinent part, that:

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion.

42 Pa.C.S.A. § 9543.1(a)(1), (2).

¶ 14 An individual seeking DNA testing must, *inter alia*, present a *prima facie* case demonstrating that "DNA testing of the specific evidence, assuming exculpatory results, would establish [ ] the appli-

2. Appellant has filed a petition to strike the Commonwealth's brief. This petition is denied.

cant's actual innocence of the offense for which [he] was convicted[.]" 42 Pa.C.S.A. § 9543.1(c)(3)(ii)(A). Section 9543.1(d)(2) further provides, in pertinent part, that:

> The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S.A. § 9543.1(d)(2)(i).

¶ 15 At the April 26, 2004 evidentiary hearing, Lieutenant Hrywnak, who was assigned to the Philadelphia Police Custodian Unit, described what became of the evidence sought by Appellant. Lieutenant Hrywnak stated that he received a memorandum from lab officer Brenner, which indicated that property, trace evidence, charts, and graphs in cases tried prior to 1983 were destroyed.[3] In that there existed no DNA evidence to test, Appellant's request for such testing was logically impossible. *See* 42 Pa.C.S.A. § 9543.1(a)(2). Consequently, the court could not have granted Appellant's petition.

¶ 16 Turning to Appellant's lengthy, second question for review, to the extent he contends the court erred in determining that the evidence he sought was destroyed, because Lieutenant Hrywnak referred to only one criminal case number in his recitation of his efforts to obtain the evidence sought by Appellant, such was not raised by Appellant in his statement of matters. Therefore, this claim is waived for purposes of appellate review.[4] *See Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (1998) (holding that "from this day forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived.").

¶ 17 Finally, Appellant claims that his right to due process was violated when he was not afforded the opportunity to attend the evidentiary hearing, and the PCRA court allegedly refused to hear evidence of the Commonwealth's bad faith in destroying the evidence against him. Since Appellant's brief contains no citations to relevant authority evidencing a right to attend such hearing and present evidence of bad faith, *See* Pa.R.A.P. 2119(a), we find that his claims form no basis for relief. *See Commonwealth v. Long,* 753 A.2d 272, 279 (Pa.Super.2000) (finding that meaningful appellate review is not possible when an appellant fails to adequately develop his argument).

¶ 18 Based on the foregoing, we affirm the order of court denying DNA testing.

¶ 19 Affirmed.

¶ 20 KLEIN, J., FILES A DISSENTING STATEMENT.

## DISSENTING STATEMENT BY KLEIN, J.:

¶ 1 I must respectfully dissent. Under certain circumstances it may be appropri-

---

3. The memorandum attesting to the destruction of the above property bore a date of November 7, 1996, thereby leading Lieutenant Hrywnak to conclude that the property was destroyed in or about 1996. *See* N.T. 4/13/04 at 14.

4. As noted above, however, Lieutenant Hrywnak testified that all evidence from crimes tried prior to 1983 was authorized for destruction.

ate for the trial court to hold a PCRA hearing in the petitioner's absence, if counsel is present and can speak on his or her client's behalf. The difference in this case, however, is that before the hearing, counsel had filed a *Turner/Finley* letter and request to withdraw from representation, stating that he believed that Watson's claims were meritless. In such a situation, I believe that the trial court violated Watson's due process rights by not only holding a hearing without him, but failing to even notify Watson that the hearing would be held. This is particularly egregious considering that this hearing ultimately led to the denial of Watson's petition.

¶ 2 It is true that a defendant is not automatically entitled to a hearing on his PCRA petition. *See* Pa.R.Crim.P. 907. However, if the trial court elects to hold a hearing on a PCRA petition, and counsel has already filed a motion to withdraw, then I believe that the defendant should be notified of such hearing and have the opportunity to appear and be heard. *See* Pa.R.Crim.P. 908(C) (trial judge shall permit defendant to appear in person at hearing on PCRA petition and shall provide defendant opportunity to have counsel).

¶ 3 Obviously if counsel has filed a motion to withdraw, he or she is in no position to properly represent the client's interests at a hearing in the client's absence. Indeed, at the conclusion of the PCRA hearing in this case, Watson's appointed counsel reiterated on the record that his client's petition should be denied. Thus, I cannot agree with the trial court's statement that Watson "was ably represented by counsel" at the hearing. (Trial Court Op., 8/11/05, at 12.)

¶ 4 Watson asserts that had he been present at the hearing, he would have pointed out to the court or his counsel that the testimony pertained only to one of the three victims and, thus, failed to address all of his charges. Watson further argues that he was precluded from presenting evidence regarding the Commonwealth's bad faith in destroying the evidence in 1996, in light of this Court's approval of DNA testing as early as 1992. In my view, these are not obviously meritless issues and Watson should be given an opportunity to be heard in the PCRA court.

¶ 5 Because I believe that Watson's due process rights were violated, I would vacate and remand for a proper hearing on Watson's PCRA petition. Therefore, I must respectfully dissent.