J-S17017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES M. ADAMS, | |
| Appellant | No. 809 WDA 2015 |

Appeal from the Order Entered May 11, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000048-1982

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 15, 2016**

Appellant, Charles M. Adams, appeals from the order of the Court of
Common Pleas of Fayette County denying his motion for post-conviction DNA
testing filed pursuant to section 9543.1 of the Post Conviction Relief Act
("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

On direct appeal, this Court summarized the underlying facts of the
case as follows:

> On January 6, 1982, [Appellant] went to a hardware store in
> Hopwood to purchase an O-ring which he needed to fix a leaky
> spigot in his home. He purchased the O-ring, drove home and
> attempted to fix the faucet. When his wife complained that the
> faucet still leaked, [Appellant] removed the spigot and drove
> back to the hardware store. There he proceeded to stab Harry
> Frankhouser 29 times, causing his death. [Appellant] then

_____

* Former Justice specially assigned to the Superior Court.

dragged the body of the deceased man to the back room. As he returned to the front of the store, Joseph Keffer entered the front door. Keffer and [Appellant] remained in the store until the police arrived.

*Commonwealth v. Adams*, 1632 Pgh 1984, 503 A.2d 453 (Pa. Super. filed September 13, 1985) (unpublished memorandum at 3).

Appellant was charged with criminal homicide and criminal attempt-robbery. On October 19, 1983, a jury convicted Appellant of first-degree murder and attempted robbery. On November 26, 1984, the trial court sentenced Appellant to serve a mandatory term of life imprisonment on the first-degree murder conviction and a consecutive term of incarceration of five to ten years on the attempted-robbery conviction. This Court affirmed Appellant's judgment of sentence on September 13, 1985, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 4, 1987. *Commonwealth v. Adams*, 503 A.2d 453 (Pa. Super. 1985), *appeal denied*, 527 A.2d 534 (Pa. 1987).

The PCRA court summarized the subsequent procedural history as follows:

[Appellant] filed his first [petition for post-conviction relief] on February 21, 1985 which was dismissed [because of] the fact it was premature due to his pending appeal. On April 18, 2005, [Appellant] filed a *pro se* Motion for DNA testing under 42 Pa.C.S.A. [§ 9543.1(a)]. On August 9, 2005 the motion was granted. On July 28, 2006, [counsel] was appointed to represent [Appellant] in his Petition for DNA testing and all subsequent matters stemming from it. On August 3, 2006 this [c]ourt ordered the Commonwealth to send all clothing items to the Pennsylvania State Police Crime Laboratory for DNA evaluation and testing. On January 4, 2007, [Appellant] was

required to submit to blood samples and testing for DNA analysis. The State Police lab report [received in May of 2007] indicated that additional "alleles" not consistent with the DNA profiles of [Appellant] or the victim were present on the victim's navy blue sock.

PCRA Court Opinion, 4/12/10, at 2.

On July 2, 2007, Appellant filed a PCRA petition seeking relief on the basis of newly discovered evidence. Subsequently, Appellant filed two amended PCRA petitions. After multiple delays, the PCRA court held an extensive evidentiary hearing on December 18, 2009, at which both Appellant and the Commonwealth presented expert testimony. On April 12, 2010, the PCRA court entered an order denying relief.

Appellant brought an appeal to this Court, which affirmed the decision of the PCRA court on December 17, 2010. **L.C. v. Adams**, 23 A.3d 586 (Pa. Super. 2010). Subsequently, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 12, 2011. **Commonwealth v. Adams**, 22 A.3d 1033 (PA. 2011).

On March 19, 2015, Appellant filed with the PCRA court the instant "motion for post conviction DNA testing." In an order dated March 30, 2015, the PCRA court directed the Commonwealth to file a response to Appellant's motion within thirty days. The Commonwealth failed to file a response as directed. Thereafter, on May 11, 2015, the PCRA court entered an order denying Appellant's request for post-conviction DNA testing. This timely

J-S17017-16

appeal followed.[1]   Both Appellant and the trial court have complied with

Pa.R.A.P. 1925.[2]

I.   THE PCRA COURT ERRED WHEN IT FAILED TO ISSUE AN ORDER
     TO HAVE THE VICTIMS BI-FOCALS, A CHROME PIPE, A BLOOD
     STAINED CARDBOARD BOX, A YELLOW 15 QUART DISH PAN, A
     BROWN LEATHER BELT SHEATH THAT WERE SOAKED WITH
     BLOOD, THAT WERE NEVER TESTED FOR DNA, BUT WERE

_____

[1] An order granting or denying a motion for DNA testing disposes of all
claims raised by all parties to the litigation and, therefore, is a final order.
**Commonwealth v. Scarborough**, 64 A.3d 602, 609 (Pa. 2013).

[2] In its Pa.R.A.P. 1925(a) filing, the trial court observed the following:

> On [May 21, 2015], the [trial c]ourt issued a 1925(b) order,
> directing [Appellant] to file a statement of errors complained of
> on appeal within twenty-one (21) days.
>
> On June 17, 2015, [Appellant] filed his Statement of
> Matters Complained on Appeal.   [Appellant's] Certificate of
> Service attests that he mailed the statement to all parties on
> June 9, 2015.  However, the envelope (attached) received by the
> [trial c]ourt is postmarked June 15, 2015, appearing to be four
> days past the June 11, 2015 deadline to file.  Failure to file a
> concise statement within the 21-day time limit set forth in Rule
> 1925(b)(2) will result in waiver of all issues not raised by that
> date.   **Commonwealth v. Gravely**, 970 A.2d 1137, 1145 (Pa.
> 2009).
>
> We do recognize that under the prisoner mailbox rule, a
> petition is considered "filed" by a prisoner on the date it is
> deposited with prison authorities for mailing, not postmarked.
> **Commonwealth v. Jerman**, 762 A.2d 366, 368 (Pa. Super.
> 2000).

Statement in Lieu of Opinion, 6/19/15, at 1-2.   Thus, it appears the PCRA
court accepted Appellant's assertion that he filed his Pa.R.A.P. 1925(b)
statement on June 9, 2015, applied the prisoner mailbox rule, and
considered the filing to be timely.   Therefore, because the trial court
accepted Appellant's filing as being timely, we will do likewise.

- 4 -

PRESENTED AT APPELLANT'S TRIAL IN 1983, WHICH WOULD RESULT IN NEWLY DISCOVERED EVIDENCE PROVING APPELLANT'S INNOCENCE.

II.   THE PCRA COURT ERRED WHEN IT RULED THAT DEFENDANT NOW ADVANCES THE EXACT SAME ARGUMENT HE DID AT HIS PCRA HEARING IN 2009, THAT AN UNKNOWN THIRD PARTY DNA PROFILE PROVES HIS INNOCENCE, WHEN IN FACT, DEFENDANT REQUESTED THAT A NATIONWIDE CODIS SEARCH BE CONDUCTED IN HIS CURRENT REQUEST FOR DNA TESTING, SINCE THE COMMONWEALTH ONLY DID A CODIS SEARCH FOR WESTERN PENNSYLVANIA.

Appellant's Brief at 3.[3]

This Court has set forth the following standard of review of orders for post-conviction DNA testing:[4]

> Post-conviction DNA testing falls under the aegis of the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, and thus, "[o]ur standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error."

***Commonwealth v. Conway***, 14 A.3d 101, 108 (Pa. Super. 2011) (citations omitted).  Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the

_____

[3] We note with disapproval the fact that the Commonwealth has failed to file an appellee's brief in this matter in addition to failing to comply with the PCRA court's directive to file a response to Appellant's most recent motion for DNA testing.

[4] We observe that motions for post-conviction DNA testing, while considered post-conviction petitions under the PCRA, are "separate and distinct" from claims pursuant to other sections of the PCRA; thus, the one-year time bar does not apply to them.  ***Commonwealth v. Perry***, 959 A.2d 932, 938 (Pa. Super. 2008).

certified record. *Commonwealth v. Watson*, 927 A.2d 274, 277 (Pa. Super. 2007). Moreover, when reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements of Section 9543.1. *Commonwealth v. Brooks*, 875 A.2d 1141, 1147-1148 (Pa. Super. 2005). It is an appellant's burden to persuade us that the PCRA court erred and relief is due. *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

As a prefatory matter, we observe the following. A movant should make a request for post-conviction DNA testing in a motion, not in a PCRA petition. *Commonwealth v. Young*, 873 A.2d 720, 724 n.2 (Pa. Super. 2005). A request for post-conviction DNA testing is not a direct exception to the one-year time limit for filing a PCRA petition. *Commonwealth v. Weeks*, 831 A.2d 1194, 1196 (Pa. Super. 2003). Such a request, however, allows a convicted person "to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2)." *Id*. (citations omitted). Moreover, Section 9543.1 does not grant movants a right to counsel. *Brooks*, 875 A.2d at 1147.

Pennsylvania's post-conviction DNA testing statute provides, in part, as follows:

> **(a) Motion.--**
>
>    (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of

imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\* \* \*

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

\* \* \*

(3) present a prima facie case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

**(d) Order.--**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

42 Pa.C.S. § 9543.1.

Before turning to Appellant's argument, we note the following legal principles. A motion for DNA testing must allege a *prima facie* case that the requested testing, assuming favorable results, would establish the movant's actual innocence. *Commonwealth v. Smith*, 889 A.2d 582, 583 (Pa. Super. 2005). If, after reviewing the record, the trial court determines there

is no reasonable probability that the testing would produce exculpatory results establishing the movant's actual innocence, the court shall deny the motion. *Id*.

In his first issue, Appellant asserts that various items from the crime scene should either be retested or tested for the first time. Appellant's Brief at 6-9. Appellant assumedly believes that his DNA is missing from various items present at the scene and that DNA from additional unknown persons might be found on various items offered into evidence. Ignoring the fact that previous DNA testing was damaging to his argument, Appellant expects that new results will somehow prove that he is innocent of the crime.

Our review of the certified record reflects the following discussion offered by the PCRA court in its order denying Appellant's most recent request for DNA testing of items presented into evidence at Appellant's trial:

> [Appellant] previously requested and obtained DNA-testing in 2005-2007. This [c]ourt then held a hearing on the findings and denied [Appellant's] PCRA in 2009-2010. In denying [Appellant's] PCRA, we explicitly addressed why an unidentified DNA profile on the victim's sock does not exonerate [Appellant]. (PCRA Ct. Op., April 12, 2010). . . .
>
> [Appellant] again seeks testing of additional evidence, as further specified in his Motion. As reasoning for more testing, [Appellant] maintains that improvements in technology will vindicate him and find the owner of the third DNA profile, "who is actually the murderer." (Def.'s Mot. ¶ 23-24). Notably, [Appellant] now advances the exact same argument that he did at his PCRA hearing in 2009, that an unknown third-party DNA profile proves his innocence. The Court already ruled on this issue in the 2010 PCRA Opinion and found that this argument in no way proves [Appellant's] *prima facie* case of innocence. . . .

Order, 5/11/15, at 2.

Our further review of the record reflects the following thorough analysis offered by the PCRA court in support of its decision to deny Appellant's previous PCRA petition based upon after-discovered evidence once DNA testing had been conducted:

> In this particular case, the new DNA technology[,] which was unavailable at the time [Appellant] was convicted, allows this petition to be filed over twenty years after the date of [Appellant's] judgment [of sentence]. DNA testing was not widely accepted in Pennsylvania until 1994, when the Pennsylvania Supreme Court first held that evidence of DNA testing was admissible in a criminal trial, after finding that such testing had become routine and fully accepted in the scientific community. **See Commonwealth v. Crews**, 536 Pa. 508, 640 A.2d 395, 403 (Pa. 1994).
>
> * * *
>
> [The PCRA] statute requires the petitioner to present a *prima facie* case that the DNA testing produced exculpatory results that establishes the petitioner's actual innocence.
>
> * * *
>
> The major issue in this case concerns a minor allele found on [the victim's] navy blue sock identified as Q16 in evidence that is inconsistent with [Appellant's] and [the victim's] DNA. [Appellant] avers that the minor allele[] found on [the victim's] sock reveals the presence of a third unidentified person's DNA, which is exculpatory evidence.
>
> [Appellant] has the burden to show that this exculpatory evidence establishes his "actual innocence." . . . In fact, the new DNA results may have done the opposite.
>
> The Commonwealth agrees with [Appellant] that there is an additional minor allele found on the victim's sock which is inconsistent with [Appellant's] or [the victim's] DNA. However, the Commonwealth pointed out at the hearing that those minor

alleles could be obtained in many ways and could be from countless individuals that touched the sock at issue during the course of investigation. Protocol back in the 1980's when this crime occurred did not require anyone at the crime scene to wear gloves and as such both defense and prosecution expert witnesses agreed that the source for the minor allele could not be determined and might have been from anyone from a police officer, detectives, the coroner, or even [the victim's] wife.

However, at the [PCRA] hearing, both experts agreed that [Appellant's] DNA matched the major component of the stain obtained from the victim's sock. [Appellant's] DNA was also found in numerous blood patterns as testified to [at the PCRA hearing] by [Commonwealth expert witness] Sarah Kinner (hereinafter "Kinner"). Kinner explained the difference between passive and transfer stains stating, "passive drops/bleeding are bloodstains that are created by the force of gravity acting alone. So if you are just standing there bleeding, it is just gravity acting on it, they are just going down." (PCRA t. p. 83). On the other hand, a transfer bloodstain, "is when a bloody object comes in contact with a clean object and blood is left behind. If you think of it, it is kind of like if you had a stamp with ink on it and you sat it down on the surface and removed it, the stamp would be left behind, the image of whatever it was." (*Id.*)

Kinner further testified that among other stains:

"A transfer/contact stain was identified on the front lower left pant leg of [the victim] . . . The DNA from the transfer contact stain on the front lower left pant leg and the rounded stain on the back of the pants reportedly matched [Appellant]." (*Id.* at 95.)

Moreover, the transfer stains on the shovel handle were reportedly consistent with [Appellant's] DNA as well as transfer contact stains that were found on the handle and blade of the knife and the cash register handle. [Appellant] testified at trial he had never touched any of the enumerated objects on which transfer stains with his DNA were found. That appears to be demonstrably untrue due to the new DNA results. (*Id.* at 96).

Further, Kinner testified that:

"A rounded drop of blood reportedly matching [Appellant's] on the back of [the victim's] pants cannot have been deposited while [the victim] lay in his final resting position."

When asked by counsel why it was significant that [Appellant's] DNA was found on that particular location, Kinner explained:

"The location of that stain on his pants, if he was laying-from the picture that I have of him laying there, that portion of his pants was not even exposed if somebody had just been standing near him and dripping down on him. He had to have been manipulated in some way for that stain to be deposited." (Id. at 98).

While [Appellant] has continuously asserted his innocence, this additional expert testimony is far more inculpatory of [Appellant] than the single small minor allele is exculpatory. Kinner stated that [the victim's] "body would have had to have been in a different position in order for that stain to be placed there." *Id*. at 106. While [Appellant] admits to walking around the victim in the back room, he has never admitted to even touching the victim's body, much less turning him over.

Similar to the victim's pant leg, Kinner testified that the blood on the front of the shovel blade was consistent with [Appellant's] DNA. This stain however was found face down in the photographs she saw of the crime scene. Kinner stated "so if it is face down like this against the floor with these drips, i[f] you are standing over the shovel, you can't deposit those stains in that position as it is photographed[.]" (*Id*. at 9[9]). Therefore, the shovel must have been moved after [Appellant's] blood dropped onto it. [Appellant's] trial testimony as to what occurred that day is completely inconsistent with the new DNA evidence.

While [Appellant] claims this new evidence is exculpatory, the [court] finds that it supports [Appellant's] conviction. The DNA evidence substantiates [Appellant's] blood was not simply passive[ly] dripped as he moved around the scene. Rather, [Appellant's] DNA was the major component of the transfer stains found on the victim's sock as well as his pant leg and

- 12 -

numerous other objects such as the knife, shovel and cash register handle.

Furthermore, while minor alleles were found on the sock, there is no other indication of anybody else's DNA on any of the other evidentiary items. Without more than that solitary minor allele, the DNA evidence does not establish his *prima facie* case of "actual innocence." On the contrary, it creates a stronger case of his guilt. As such [Appellant's] PCRA petition must be DENIED.

PCRA Court Opinion, 4/12/10, at 3-7 (emphasis in original).

In his instant motion seeking DNA testing, Appellant has asserted his innocence as required under the statute. However, Appellant has failed to set forth a *prima facie* case demonstrating that further DNA testing of the specific evidence, assuming exculpatory results, would establish Appellant's actual innocence. Indeed, Appellant's assertion of innocence, while necessary, is insufficient to establish a *prima facie* showing of "actual innocence" under 42 Pa.C.S. § 9543.1. Appellant must offer more than a bald assertion of innocence and must demonstrate that the DNA testing "would establish" actual innocence. **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005).

Moreover, even if the results of the requested DNA testing definitively excluded Appellant's DNA from the scene, further confirmation of this absence does not enable Appellant to meet his burden. **See Heilman**, 867 A.2d at 547 ("In DNA as in other areas, an absence of evidence is not evidence of absence"). Likewise, even if the results of the requested DNA testing positively identified someone else's DNA at the scene, Appellant fails

to explain how that necessarily points to a different assailant. Thus, it would not exculpate Appellant. *See Smith*, 889 A.2d at 585 ("Merely detecting DNA from another individual on the victim's fingernails, in the absence of any evidence as to how and when that DNA was deposited, would not exculpate appellant by pointing to a different assailant.").

Consequently, we are left to conclude that Appellant has failed to establish a *prima facie* case demonstrating that the DNA test, if exculpatory, would have established his actual innocence. Because we detect no error in the PCRA court's evaluation of this case, we conclude that Appellant fails to qualify for relief.

In his second issue, Appellant argues that the PCRA court erred in refusing to conduct a more extensive search of the Combined DNA Index System ("CODIS") of the previous DNA results.[5] Appellant's Brief at 9-12. We need not reach the merits of this issue because we are constrained to conclude that Appellant's discussion in the argument section of his brief is not properly developed for appellate review. It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant authority. Pa.R.A.P. 2119(a). *See Commonwealth v. Genovese*, 675 A.2d 331, 334 (Pa. Super. 1996) (stating that "[t]he argument portion of an appellate brief

_____

[5] In addition, Appellant attempts to present, for the first time on appeal, a claim that his PCRA counsel was ineffective. Appellant's Brief at 10.

must be developed with a pertinent discussion of the point which includes citations to the relevant authority").

In **Commonwealth v. B.D.G.**, 959 A.2d 362 (Pa. Super. 2008), a panel of this Court offered the following relevant observation regarding the proper formation of the argument portion of an appellate brief:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. **Commonwealth v. Williams**, 566 Pa. 553, 577, 782 A.2d 517, 532 (2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. **Id**. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. **Commonwealth v. Luktisch**, 680 A.2d 877, 879 (Pa. Super. 1996).

**Id**. at 371-372. Thus, failure to cite case law or other legal authority in support of an argument results in waiver of the claim. **Commonwealth v. Owens**, 750 A.2d 872, 877 (Pa. Super. 2000).

Here, Appellant's argument pertaining to this issue contains no citation to relevant legal authority beyond a cursory legal citation at the beginning of his argument. Appellant's Brief at 9-12. Because Appellant's argument on this issue consists of broad statements and allegations and no analysis with relevant law, the argument is not properly developed for our review as it fails to apply any law to the facts of the case. This failure to develop a legal argument precludes appellate review. Thus, we conclude that this issue is waived because the argument is not adequately developed.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/15/2016