J-S19025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY WOODSON | : | |
| | : | |
| Appellant | : | No. 1428 MDA 2023 |

Appeal from the PCRA Order Entered September 19, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002033-2007

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY BECK, J.:                    **FILED: AUGUST 8, 2024**

Larry Woodson ("Woodson") appeals pro se from the order entered by
the Court of Common Pleas of Luzerne County ("PCRA court") denying his
motion for DNA testing pursuant to the Post Conviction Relief Act ("PCRA").
***See*** 42 Pa.C.S. § 9543.1.  After careful review, we affirm.

In July 2006, the Bureau of Narcotics Investigation and Drug Control
and the Luzerne County Drug Task Force, as well as various local police
departments, launched a joint investigation into cocaine trafficking in Luzerne
County.  In August 2006, Corporal Adam Christian, working undercover,
arranged with David Keels ("Keels"), a confidential informant, to purchase
narcotics from Woodson.  Corporal Christian bought four baggies of crack

---

[*] Retired Senior Judge assigned to the Superior Court.

cocaine and six baggies of crack cocaine on separate days from Woodson. Subsequently, Officer Mark Stefanowicz, an undercover officer, and Keels met with Woodson and purchased seven baggies of crack cocaine.

Woodson was arrested and charged with numerous crimes. The case proceeded to a jury trial, at which Keels, Officer Stefanowicz, and Corporal Christian identified Woodson as the person who sold them crack cocaine. In October 2008, the jury convicted Woodson of three counts each of possession of a controlled substance, possession with intent to deliver, and conspiracy. The trial court sentenced Woodson to an aggregate term of 210 to 420 months in prison. This Court affirmed the judgment of sentence on April 9, 2010. *Commonwealth v. Woodson*, 2108 MDA 2008 (Pa. Super. Apr. 9, 2010) (non-precedential decision). Woodson filed numerous PCRA petitions, all of which were denied.

On February 25, 2022, Woodson filed pro se the instant motion for post-conviction DNA testing, and subsequently a supplemental motion on May 31, 2023. Woodson sought DNA testing of the seventeen baggies related to the drug transactions. On September 8, 2023, the PCRA court held an evidentiary hearing where the Commonwealth called four witnesses who testified that the evidence was missing and could not be tested. Ultimately, the PCRA court denied the motion for DNA testing, concluding that the evidence was likely destroyed after the passage of sixteen years. Woodson filed a timely appeal.

On appeal, Woodson presents the following issues for review:

1. [Whether] [t]he PCRA Court erred in finding that [Woodson's] rights, pursuant to the 14th Amendment of the United States Constitution and Article 1., § [] 9., of the Pennsylvania Constitution, where the Commonwealth's "negligent" by failing to preserve "exculpatory and material evidence", pursuant to ***Arizona v. Youngblood***, 488 U.S. 51, 102 L.Ed. 281, 109 S.Ct. 885 (1988); ***See also***[] ***United States v. Agurs***, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 2d. 342 (1976), ***Brady v. Maryland***, 373 U.S. 83, 10 L.Ed. 2d. 215, 83 S.Ct. 1184 (1963)?

2. [Whether] [t]he PCRA Court erred in finding that [Woodson's] rights, pursuant to the 14th Amendment of the United States Constitution and Article 1., § [] 9., of the Pennsylvania Constitution, where the Commonwealth was allowed to use "false evidence and false testimony" to obtain a conviction, pursuant to ***Giglio v. United States***, 405 U.S. 150 (1972); ***Miller v. Pate***, 386 U.S. 1 (1967); ***Napue v. Illinois***, 360 U.S. 264 (1959), ***Pyle v. Kansas***, 317 U.S. 213 (1942), ***Mooney v. Halohan***, 294 U.S. 103 (1935), ***Pennsylvania v. Ritchie***, 480 U.S. 39, 57 (1987), ***United States v. Bagley***, 473 U.S. at 682, ***Haskell v. Superintendent Green***, 866 F.3d (3[d] Cir. 2007)?

3. [Whether] [t]he PCRA Court erred in finding that [Woodson's] rights, pursuant to the 14th Amendment of the United States Constitution and Article 1., § [] 9., of the Pennsylvania Constitution, where the Court denied the Appellant's DNA Testing for "Touch DNA Testing", pursuant to 42 Pa.C.S. § 9543.1; ***See also***[] ***District Attorney's Office v. Osnorne***, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed. 2d. 38, 2009 LEXIS?

Woodson's Brief at 1.

"[W]hen examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review." ***Commonwealth v.***

- 3 -

*Gacobano*, 65 A.3d 416, 419 (Pa. Super. 2013).[1] "[W]e determine whether the ruling is supported by the record and free of legal error." *Commonwealth v. Hardy*, 274 A.3d 1240, 1246 (Pa. Super. 2022) (citation omitted).

We will address Woodson's claims together. Woodson argues that the Commonwealth was required to preserve the evidence once it was in their possession. Woodson's Brief at 7. Woodson asserts that since the Commonwealth took the evidence for trial and did not return it to the police after trial, his due process rights were violated. *Id.* at 8-9, 15, 31; *see also id.* at 13 (noting that the PCRA court failed to account for the negligent handling of the evidence by the Commonwealth, and did not consider whether the Commonwealth acted in bad faith). Woodson argues that the seventeen baggies of crack cocaine would be found to be "independently exculpatory." *Id.* at 14; *see also id.* at 16 (stating the possibility that the lost evidence "would have exonerated [him] was not remote"), *id.* at 30-31. Woodson claims that the Commonwealth allowed their witnesses to commit perjury and that the witnesses presented "false testimony." *Id.* at 17; *see also id.* at 18. Woodson argues that the case turns on the credibility of the undercover officers and the confidential informant the Commonwealth presented at trial. *Id.* at 20. Woodson avers that the witnesses were not able to conclusively

---

[1] It is well settled that a request for DNA testing under section 9543.1 is not subject to the PCRA time-bar. *Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa. Super. 2011).

establish the identity of the perpetrator and that they were unable to sufficiently state that he was, in fact, the perpetrator. *Id.* at 21-28. Woodson argues that he is entitled to relief because he only had to show the DNA testing would put it "within the realm of reason" that he is innocent. *Id.* at 29.

Section 9543.1 provides in relevant part:

**(a) Motion.—**

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because of the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

**(c) Requirements.—**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

\* \* \*

(2)     (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

* * *

(3)     present a prima facie case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

* * *

**(d) Order.—**

(1)     Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

* * *

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

* * *

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted; …

42 Pa.C.S. § 9543.1.

Preliminarily, the parties do not dispute that the evidence was likely destroyed. *See* N.T., 9/8/2023, at 12, 16-17, 24-25, 26, 32-33, 36-44, 45-46, 48, 49, 51; *see also* PCRA Court Opinion, 9/19/2023 at 6-7 (finding witnesses presented at the evidentiary hearing to be credible). Therefore, there was no evidence to DNA test, and the PCRA court could not have granted relief. *See Commonwealth v. Watson*, 927 A.2d 274, 278 (Pa. Super. 2007) (concluding that testimony presented at the evidentiary hearing established that the evidence was destroyed and therefore testing was impossible, and the court was correct in denying the petition).

In any event, Woodson fails to establish that the evidence in question, known to him prior to his conviction, was not tested because

> (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency.

*Commonwealth v. Walsh*, 125 A.3d 1248, 1254 (Pa. Super. 2015) (citation omitted); *see also* 42 Pa.C.S. § 9543.1(a)(2). Here, the baggies were available for testing at the time of his trial in October 2008, as the Commonwealth introduced testimony related to the drug sales and admitted the baggies that contained the drugs into evidence. *See* N.T., 10/8-10/2008, at 27, 35, 75. Moreover, DNA testing was available at that time and Woodson

does not establish that he requested DNA testing, let alone that the trial court refused funds for DNA testing. Additionally, since his judgment of sentence became final more than a decade ago, Woodson has filed multiple unsuccessful PCRA petitions, none of which requested the DNA testing of the baggies. *See* 42 Pa.C.S. § 9543.1(d)(1)(iii); *see also Walsh*, 125 A.3d at 1258 (noting motion for DNA testing was untimely because appellant filed multiple PCRA petitions were filed before seeking DNA testing). Accordingly, Woodson fails to satisfy the threshold requirements to obtain post-conviction DNA testing under section 9543.1. *See Walsh*, 125 A.3d at 1254 (concluding that appellant failed to meet threshold requirements of section 9543.1(a)(2) where evidence was available to appellant at the time of trial, DNA testing was available, and the trial court did not refuse a request to fund DNA testing on the evidence).

Additionally, Woodson has failed to present a prima facie case that the DNA testing, assuming exculpatory results, would establish his actual innocence. *See id.* at 1257-58. Both police officers independently identified Woodson as the person who delivered them the illegal drugs. *See* N.T., 10/8-10/2008 at 24-25, 28-29, 32-33, 35, 69-77. In addition, Keels testified that he knew Woodson at the time of these events, he was present for each drug purchase, and Woodson sold and delivered the crack cocaine in each instance. *Id.* at 99-107. Therefore, even if the baggies did not contain Woodson's DNA, in light of the eyewitness testimony, such evidence would not establish his

actual innocence. *See Commonwealth v. Tyler*, 234 A.3d 750, 754 (Pa. Super. 2020) (stating that "this Court has repeatedly held that the mere absence of a defendant's DNA, by itself, does not satisfy the "actual innocence" requirement under [§] 9543.1(d)(2)(i)"); *In re Payne*, 129 A.3d 546, 558 (Pa. Super. 2015) ("In DNA as in other areas, an absence of evidence is not evidence of absence" and a defendant "may be convicted on wholly circumstantial evidence"). Woodson therefore fails to establish he is entitled to DNA testing of the baggies.

Finally, we cannot address Woodson's attempt to present additional claims regarding the destruction of the evidence under the guise of a motion for post-conviction DNA testing. *See Commonwealth v. Gandy*, 38 A.3d 899, 905-06 (Pa. Super. 2012) (stating that section 9543.1 cannot be utilized "to raise extraneous issues not related to DNA testing in an effort to avoid the one-year time bar" under the PCRA, and concluding that "the destruction of evidence that likely occurred over 25 years ago" is not related to any DNA testing conducted under section 9543.1); *see also Walsh*, 125 A.3d at 1252 (noting that issues raised outside the request for DNA evidence "are unreviewable at this juncture"). To that end, Woodson's judgment of sentence became final in September 2010, when the time to file a petition for allowance of appeal to our Supreme Court expired. *See* 42 Pa.C.S. § 9545(b)(3). Woodson's attempt to raise these claims in a PCRA petition would be patently untimely and he has not raised any of the time-bar exceptions under 42

- 9 -

Pa.C.S. § 9545(b)(1) to allow a court to have jurisdiction of his constitutional claims. **See Commonwealth v. Derrickson**, 923 A.2d 466, 468 (Pa. Super. 2007) ("Without jurisdiction, we simply do not have the legal authority to address the substantive claims.") (citation omitted).[2]  Therefore, we find no legal error and affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024

---

[2] To the extent Woodson seeks to raise other claims outside the request for DNA testing of the baggies, such issues are not reviewable for the same reasons.