J-S46029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH RHONE | : | |
| | : | |
| Appellant | : | No. 2848 EDA 2018 |

Appeal from the Order Entered September 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1127472-1975

BEFORE: PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 27, 2019**

Appellant, Joseph Rhone, appeals *pro se* from the order entered on September 18, 2018, denying his claim for deoxyribonucleic acid (DNA) testing pursuant to 42 Pa.C.S.A. § 9543.1 under the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

On a previous appeal, we summarized the facts of this case as follows:

On November 5, 1975, Herschel Williams, also known as the Jolly Green Giant, was shot to death as he entered his car with his two young children in front of their home.  Very shortly after the shooting, [A]ppellant and two other men were arrested for Williams' murder.  After a suppression hearing in which the court ruled that some of [A]ppellant's statements to police would be admissible at trial, [A]ppellant failed to appear for trial.  After nearly [13] years of attempting to locate [A]ppellant, police

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

discovered him in Philadelphia[, Pennsylvania] and he was brought to trial in 1991.

Several civilian and police witnesses testified for the Commonwealth. The civilian witnesses established that on the day of the murder, three men in a green [C]adillac were present on the street where Williams lived. Two of the men wore brown hats; one of the hats was identified as a brown jeff cap. The two men who wore hats left the car and were seen approaching Williams from opposite sides of the street, whereupon they shot him repeatedly. None of the witnesses [were able to positively] identify [A]ppellant as one of the shooters. Within minutes of the shooting, a call went over police radio describing the vehicle involved in the shooting. Police stopped a car matching the description and arrested its occupants, including [A]ppellant. At the time of his arrest, [A]ppellant was wearing a brown jeff cap. In addition to testimony regarding the events on the day of the shooting, the Commonwealth offered police testimony that [A]ppellant had been seen the day before, in the same green [C]adillac, driving behind the victim's car.

At the time of his arrest, [A]ppellant acknowledged in a statement to police that he was present at the scene of the shooting, but claimed to have been in the car the entire time. He stated that he heard the gunshots but did not witness Williams' murder.

*Commonwealth v. Rhone*, 619 A.2d 1080, 1081 (Pa. Super. 1993).

On May 1, 1991, the jury found Appellant guilty of first-degree murder, conspiracy, and possession of an instrument of crime. *See* PCRA Court Opinion, 11/21/18, at 1. After denying Appellant's post-sentence motions, the trial court sentenced him to "life imprisonment for the murder conviction and lesser consecutive terms of imprisonment for the remaining convictions." *Id.* This Court affirmed Appellant's judgment of sentence on January 27, 1993. *Commonwealth v. Rhone*, 619 A.2d 1080 (Pa. Super. 1993). Our Supreme Court subsequently denied *allocatur* on June 7, 1993. *Commonwealth v. Rhone*, 627 A.2d 731 (Pa. 1993). Thereafter, Appellant

filed his first *pro se* PCRA petition on June 19, 1995. **See** PCRA Court Opinion, 11/21/18, at 2. "Counsel was appointed and subsequently filed an amended petition claiming ineffective assistance of counsel." **Id.** On October 1, 1996, the PCRA court denied Appellant's petition. **Id.** This Court affirmed the PCRA court's dismissal order on August 7, 1997. **See Commonwealth v. Rhone**, 704 A.2d 695 (Pa. Super. 1997). Our Supreme Court denied *allocatur*. **See Commonwealth v. Rhone**, 716 A.2d 1248 (Pa. 1998).

In 1998, 2005, and 2007, Appellant unsuccessfully sought collateral relief "through serial petitions." PCRA Court Opinion, 11/21/18, at 2. Then, on July 18, 2016, Appellant filed his fifth *pro se* PCRA petition. **Id.** The PCRA court ultimately dismissed his petition as untimely, and on April 22, 2019, this Court affirmed the PCRA court's decision. **See Commonwealth v. Rhone**, __A.2d__, 3352 EDA 2017 (Pa. Super. 2019) (unpublished memorandum), at 1-9 (citation omitted).

While Appellant's appeal following the denial of his July 18, 2016 PCRA petition was pending before this Court, he filed the current motion for DNA testing.[2] **See** PCRA Court Opinion, 11/21/18, at 2. In his motion, Appellant

---

[2] Our Supreme Court has held that "a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review." **Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000). Nonetheless, this Court and our Supreme Court have continuously distinguished between a motion for DNA testing under Section 9543.1 and a petition for collateral relief under Section 9543. **See Commonwealth v. Scarborough**, 64 A.3d 602, 609 (Pa. 2013) (explaining that while Section

sought DNA testing of the "brown jeff cap" the Commonwealth alleged he wore at the time of the murder. **See id.** at 3. Essentially, Appellant argued that "the Commonwealth's [entire] case was based on the identification of [Appellant] from a 'hat.'" Appellant's Motion for DNA Testing, 8/9/17, at 3. On September 18, 2018, the PCRA court denied Appellant's motion. **See id.** This timely appeal followed.

In Appellant's brief, he asserts that the trial court erred in denying his motion for DNA testing.[3] **See** Appellant's Brief at *1-7 (un-paginated). Specifically, Appellant contends that the PCRA court erred in not finding that Appellant demonstrated implicit consent by filing the motion, and therefore, met the requirements of Sections 9543.1(c)(ii)-(iii). **See id.** at *3-6 (un-paginated). Also, Appellant argued that the PCRA court erroneously required him to demonstrate that, if exculpatory, the DNA results would establish Appellant's actual innocence. **See id.** We disagree.

_____

9543.1 is placed "within the larger statutory framework of the PCRA" it is "a wholly separate proceeding from [the] litigation of a PCRA petition"); **Commonwealth v. Conway**, 14 A.3d 101, 108 n.2 (Pa. Super. 2011) (explaining that the one-year time bar of Section 9545 does not apply to a motion filed under Section 9543.1). Accordingly, the fact that Appellant filed the current motion while his PCRA petition was pending before this Court does not impede our review. **Id.** at 588.

[3] We note that Appellant's brief does not adhere to our Rules of Appellate Procedure. **See generally** Pa.R.A.P. 2111-2119. In fact, it does not include any of the requirements set forth in Rule 2111(a)(1)-(12). **See** Appellant's Brief *1-7 (un-paginated). As such, we could quash for these multiple deficiencies, but we decline to do so because our judicial review is unhampered.

Our standard of review is as follows:

Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

***Commonwealth v. Walsh***, 125 A.3d 1248, 1252–1253 (Pa. Super. 2015)

(citation omitted).

Section 9543.1 provides, in pertinent part:

(a) Motion.--

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

***

(c) Requirements.--**In any motion under subsection (a)**, under penalty of perjury, the applicant **shall:**

> (1) (i) specify the evidence to be tested;
>
> (ii) **state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and**
>
> (iii) **acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.**
>
> (2) (i) [] assert the applicant's actual innocence of the offense for which the applicant was convicted and that the applicant seeks DNA testing for the purpose of demonstrating the applicant's actual innocence;

* * *

(3) **present a prima facie case demonstrating that the:**

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) **DNA testing of the specific evidence, assuming exculpatory results, would establish:**

(A) **the applicant's actual innocence of the offense for which the applicant was convicted**[.]

42 Pa.C.S.A. § 9543.1 (emphasis added).

In examining Section 9543.1, this Court previously determined:

The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation**; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.**

***Walsh***, 125 A.3d at 1254–1255 (emphasis in original), *quoting* ***Commonwealth v. B. Williams***, 35 A.3d 44, 50-51 (Pa. Super. 2011). Notably, this Court has repeatedly held that the "absence of evidence is **not evidence of absence**." ***Commonwealth v. Heilman***, 867 A.2d 542, 547 (Pa. Super. 2005) (emphasis added).

Upon review, we conclude that the PCRA court properly denied Appellant's motion for DNA testing. At the outset, we note that Appellant's motion failed to comply with Sections 9543.1(c)(1)(ii) and (iii), which by their plain language, require a movant's express consent to providing samples of

bodily fluids and acknowledgment that test results may be entered into law enforcement database and used in the investigation of other crimes. ***See id.***; ***see also Commonwealth v. Smith***, 889 A.2d 582, 584 (Pa. Super. 2005) (interpreting Section 9543.1 according to its "clear words and plain meaning"). To this, Appellant argues that "the entire [m]otion for DNA testing [constitutes] consent" and because Appellant filed *pro se*, this Court "must construe his motion in a light commensurate with his status as a *pro se* litigant if all indications in the motion show his implied consent consistent with the rules." ***See*** Appellant's Brief at *3-4 (un-paginated). We have previously determined, however, that "*pro se* status confers no special benefit upon the appellant." ***Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa. Super. 2005). Rather, "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Id.*** Accordingly, Appellant's *pro se* status does not require this Court to conclude that simply filing the motion meets the necessary requirements set forth in Sections 9543.1(c)(1)(ii) and (iii).

Furthermore, even if Appellant complied with the requirements of Sections 9543.1(c)(1)(ii) and (iii), Appellant still failed to establish a *prima facie* case that the DNA results, if exculpatory, would establish Appellant's

actual innocence.[4]   In his motion, Appellant argued that because "the Commonwealth's [entire] case was based upon the identification of [Appellant] from a 'hat,'" the absence of his DNA on the hat would establish a "very high 'reasonable possibility'" of his actual innocence.  Appellant's Motion for DNA Testing, 8/9/17, at 3.  The PCRA court addressed Appellant's claim of actual innocence as follows:

> [Appellant] argued that he was identified and ultimately convicted based solely upon a hat he was wearing during the commission of the crime.  Preliminarily, the lack of [Appellant's] DNA on the hat would not prove that he did [not] wear it any point prior to his arrest.
>
> Furthermore, contrary to [Appellant's] characterization of the evidence presented by the prosecution, his conviction was not based solely upon the introduction of the jeff cap. Witnesses testified that three men in a green Cadillac were responsible for the murder and two of the men wore brown hats; one of the hats was identified as a brown jeff cap. Testimony further established that police stopped a car matching the description of the vehicle involved, and at the time of [Appellant's] arrest, he was wearing a brown jeff cap. There was also police testimony that [Appellant] had been seen the day before, in the same green Cadillac, driving behind the victim's car. Additionally, [Appellant] told the police shortly after the shooting that he was present at the scene of the shooting in the green Cadillac. [Appellant's] admission alone connects him with his co-conspirators at the crime scene, regardless of whether his DNA was present on the hat he was wearing when arrested. Thus, given the evidence presented at trial, [Appellant] failed to show that favorable DNA testing results would make it more likely than not that no reasonably juror would have found him guilty beyond a reasonable doubt.

_____

[4] In Appellant's brief, he seemingly argues that the PCRA court erred in "coming to the merits" of whether the DNA results would establish actual innocence.  **See** Appellant's Brief at *5 (un-paginated).  However, Section 9543.1(c)(3) requires the Appellant to make such a demonstration. **See** 42 Pa.C.S.A. §9543.1(c)(3).  Therefore, Appellant's argument is meritless.

PCRA Court Opinion, 11/21/18, at 3-4 (internal citations omitted). We accept the PCRA court's reasoning and conclusion that the absence of Appellant's DNA on the hat would not establish his actual innocence. **_See Heilman_**, 867 A.2d at 547. Accordingly, because Appellant failed to satisfy the statutory requirements listed in Section 9543.1, we discern no error in denying Appellant's motion for DNA testing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/19