**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael S. HEILMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 27, 2004.

Filed Jan. 18, 2005.

Scott Coffey, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: LALLY–GREEN, KLEIN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 This case returns to our Court for the third time in the past fourteen years. We are called upon to consider the propriety of the trial court's dismissal without a hearing of Heilman's second petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. With that petition, Heilman seeks testing under PCRA's § 9543.1, the recently enacted section that permits an inmate to seek DNA testing of evidence used to convict him where such testing may establish his innocence of the crime(s) of conviction. The trial court dismissed Heilman's petition because it found that he failed to satisfy the *prima facie* requirement set forth in § 9543.1(c)(3). We affirm.

¶ 2 When this case appeared before us on appeal of the trial court's denial of Heilman's first PCRA petition, we summarized the facts as follows:

> This case involves the death of Tamara Scott. Ms. Scott died on February 17, 1987, as the result of three gunshot wounds to the head.
>
> The Commonwealth called several witnesses who related a rather convoluted series of events leading up to the arrest of the defendant. A few months after the killing, the defendant and Jerry Dixon were interviewed by the police. Both of these men told the police that a third man, Alex Dean, killed Ms. Scott in the parking lot of a Giant Eagle store on the northside of [Pittsburgh] and then dumped her body in another northside parking lot. As a result of this information, the police charged Alex Dean with Criminal Homicide (N.T. 3/20/90, pp. 106–120, 242–250).
>
> Further police investigation, including a recantation by Mr. Dixon, led to the defendant's arrest for the shooting death of Ms. Scott. Mr. Dixon stated that he and the defendant concocted the story blaming Mr. Dean while the two men were incarcerated together in the Allegheny County Jail, and the true story

was as follows: Mr. Dixon, acting as jitney driver, took the defendant and Ms. Scott, who was a prostitute picked up by the defendant in the downtown section of the city, to a parking lot on the northside of the city. The defendant and Ms. Scott exited the vehicle and went behind a building. A short time later, Mr. Dixon heard gun shots and the defendant returned to the vehicle alone (N.T. 3/20/90, pp. 221–245).

In addition to the testimony of Mr. Dixon and several police officers who had interviewed the defendant, the Commonwealth presented the testimony of David Pippens and Keith Pack, two other jail inmates to whom the defendant bragged about the killing of Ms. Scott (N.T., 3/20/90, pp. 180–88, 380–409).

*Commonwealth v. Heilman*, No. 04124 Pittsburgh 1995, at 2, 451 Pa.Super. 623, 679 A.2d 252 (filed April 1, 1996) (quoting PCRA Court Opinion, 11/13/95, at 2–3).

¶ 3 Heilman was convicted on both counts raised against him: Criminal Homicide, 18 Pa.C.S. § 2501(a), and Violation of the Uniform Firearms Act, 18 Pa.C.S. § 6106. Heilman's subsequent post-trial motions were denied, and he was sentenced to five to ten years' imprisonment on June 20, 1990. On appeal, we affirmed Heilman's judgment of sentence, and on October 22, 1992, the Pennsylvania Supreme Court denied his petition for allowance of appeal. Heilman filed his first PCRA petition alleging ineffective assistance of trial counsel in February 1994. The trial court dismissed his petition on July 6, 1995, and we affirmed the dismissal on April 1, 1996. Once again, the Pennsylvania Supreme Court denied Heilman's petition for allowance of appeal. Heilman's federal *Habeas Corpus* petition was denied on April 23, 2003.

¶ 4 Less than a month later, Heilman filed a Motion for DNA Testing Pursuant to the PCRA, and the PCRA court appointed counsel. Appointed counsel then filed an amended Motion for Performance of Forensic DNA Testing Pursuant to 42 Pa.C.S. § 9543.1, the PCRA court's denial of which underlies this appeal. Heilman raises the following challenge to the trial court's ruling:

> Did the Trial Court err in denying Appellant's Motion for Performance of Forensic DNA Testing under the Post Conviction Relief Act since if testing of the evidence revealed that Appellant's DNA was not on any of the crime scene items or items removed from the victim's body, then Appellant could not have possibly committed the instant homicide and he is innocent of the instant crimes?

Brief for Appellant at 3. Our scope and standard of review follow:

> When reviewing the denial of a PCRA petition, our scope of review is limited by the parameters of the act. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general we may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm.

*Williams v. Erie County Dist. Attorney's Office*, 848 A.2d 967, 969 (Pa.Super.2004) (citations and internal quotation marks omitted).

¶ 5 This is only the fourth case in which this Court has been asked to consider 42 Pa.C.S. § 9543.1. *See id.; Commonwealth v. McLaughlin*, 835 A.2d 747 (Pa.Super.2003); *Commonwealth v. Weeks*, 831 A.2d 1194 (Pa.Super.2003). The statute, which took effect in September 2002, provides, in relevant part, as follows:

## § 9543.1. Postconviction DNA testing

(a) Motion -

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. * * * If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995 . . . .

* * * *

(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases . . . .

(2) (i) assert the applicant's actual innocence of the offense for which the appellant was convicted; and

* * * *

(3) present a prima facie case demonstrating that the

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted . . . .

* * * *

(d) Order.—

* * * *

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted . . . .

42 Pa.C.S. § 9543.1.

¶ 6 In none of the three prior cases in which we have considered § 9543.1 has a defendant asserted, in an attempt to satisfy the *prima facie* case requirement of § 9543.1(c)(3), that an *absence* of DNA evidence would conclusively absolve him of culpability. In the instant case, however, Heilman's entire argument depends on that premise. Heilman states in his formulation of the question presented that, "if testing of the evidence revealed that Appellant's DNA was not on any of the crime scene items or items removed from the

victim's body, then Appellant could not have possibly committed the instant homicide . . . ." Brief for Appellant at 3. Heilman reuses this language verbatim in his Summary of the Argument. Brief for Appellant at 8. In mounting his argument, after observing that "[t]he killer obviously beat the victim about her face and then shot her at close range" and "obviously had sex with her . . . before he killed her," Heilman insists that if he had murdered the victim, "his DNA would have been all over that crime scene (including the victim's body and her clothing)." Brief for Appellant at 13. "Accordingly," concludes Heilman, "the results of the DNA testing would have proved Appellant's actual innocence of the instant homicide. Hence, Appellant made out a *prima facie* case warranting DNA Testing and the Trial Court erred in denying the Motion for Performance of DNA Testing." Brief for Appellant at 14.

¶ 7 The trial court observed the same dependency of Heilman's argument on that faulty premise, and in separate analyses considered each piece of evidence for which Heilman sought DNA testing. First, it considered Heilman's requests for testing of two condoms and a denture plate recovered from the area where the victim's body was recovered. Noting that "[n]one of these items were linked to the defendant or offered at trial to suggest that defendant had any connection to these items," the trial court concluded that even if "none of defendant's genetic material was present, it would not establish that defendant did not commit the murder." Trial Court Opinion, 5/17/04 (T.C.O.), at 9. Next, the trial court considered Heilman's request for DNA testing of a tree branch found laying across the victim's body on which a detective testified there may have been a red smear. Again, the trial court concluded that Heilman failed to demonstrate that the ab-

sence of his genetic material from that branch would establish his innocence. T.C.O. at 9. The trial court reached the same conclusions regarding Heilman's requests for testing on the victim's fingernail cuttings and head and pubic hair samples; the victim's vaginal, rectal, and oral smears; a latex glove recovered from the car in which Dixon and Heilman picked up and transported the victim; and a pad taken from that same car. T.C.O. at 9–11. Regarding Heilman's request for testing of gunshot residue, the trial court observed that "DNA testing would reveal nothing." T.C.O. at 10. With regard to Heilman's request for testing of the victim's clothing, the trial court observed that only the victim's leggings were found to contain any biological materials. It noted, however, that while semen was found in the leggings, "the victim was a prostitute and the semen could have been deposited by anyone." T.C.O. at 10. Thus, even if this semen failed to match Heilman's DNA, it would not conclusively demonstrate his actual innocence of the murder. Finally, with respect to Heilman's request for DNA testing of the victim's own blood, the court concluded that such testing "would reveal nothing with the possible exception that it was the victim's blood." T.C.O. at 10.

¶ 8 Pennsylvania Rule of Appellate Procedure 2119(a) requires an appellant to provide "such discussion and citation of authorities as are deemed pertinent." Failure to provide such citations may result in waiver of the argument asserted. *See Johnson v. Martofel,* 797 A.2d 943, 946 n. 1 (Pa.Super.2002). Although we have already acknowledged, *supra,* the paucity of precedent on the question presented, that does not free Heilman from the obligation to provide more than a bald assertion based on an unintuitive scientific premise. On its face, the *prima facie*

requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires an appellant to demonstrate that favorable results of the requested DNA testing *"would establish"* the appellant's actual innocence of the crime of conviction. Heilman has failed to make such a demonstration, nor could he. In DNA as in other areas, an absence of evidence is not evidence of absence. Furthermore, a murder suspect may be convicted on wholly circumstantial evidence, of which there was plenty in this case. *See Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751, 754 (1970).

¶ 9 For the foregoing reasons, Heilman has failed to satisfy the requirements of § 9543.1. Accordingly, the trial court did not err in denying his second PCRA petition, and even assuming *arguendo* the adequacy of Heilman's argument to avoid Rule 2119 waiver, his appeal plainly lacks merit.

¶ 10 Order **AFFIRMED.**