J-S47021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT HINES | : | |
| | : | |
| Appellant | : | No. 989 EDA 2024 |

Appeal from the Order Entered March 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0606671-1997

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED MARCH 18, 2025**

Robert Hines appeals from the denial of his motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1.  The PCRA court ruled that Hines failed to present a *prima facie* case that exculpatory results from the requested DNA tests would establish Hines' innocence.  42 Pa.C.S. § 9543.1(c)(3)(ii)(A) (the "*prima facie* requirement").  We assume that Hines met the *prima facie* requirement, but we conclude that Hines failed to explain how there is a reasonable possibility that DNA testing would produce exculpatory evidence. 42 Pa.C.S. § 9543.1(a)(6)(i) (the "production requirement").  Accordingly, we affirm.

On February 4, 1994, someone robbed Jose Martinez's grocery store in Philadelphia and shot and killed Martinez.  Notably, there was a shell casing on the floor, and witnesses stated that the perpetrator had taken money and food stamps from the cash register.

On March 27, 1997, police charged Hines with murder and other crimes related to this incident. The case proceeded to a non-jury trial in June of 1998, where multiple witnesses positively identified Hines as the perpetrator.[1] Chandra Layton, Hines' friend, testified that she was some distance away from the store on her grandmother's porch when she heard the gunshot and saw Hines running away. Layton recalled that two years later, Hines laughed when she told him that Martinez had died. She identified Hines to the police.

Yudelka Herrera, who was in the store, testified that Hines bought cigarettes, left, and returned to rob the store. Yudelka Herrera identified Hines as the perpetrator when prompted by the prosecutor.

Maria Herrera, who was in the store as well, testified that the perpetrator discharged a shell casing when he shot Martinez and that he took money and food stamps. Although Maria Herrera identified Hines as the perpetrator, the trial court expressly discredited Maria Herrera's identification.

Lawrence Wesley, a former friend of Hines, also identified Hines as the perpetrator. Wesley claimed he was talking with friends on the night of the crime, when Hines confessed to robbing a store and said he thought he "banged the guy in the butt." Hines asserts in this appeal that the person who had reported the confession to the police with Wesley later recanted.

---

[1] Initially, no one identified the perpetrator by name, although witnesses had described him as taller (5'11" or 6'2") and darker-complected than Hines (5'9", medium complexion) in their statements to police.

At trial, Hines presented an alibi defense. His mother, Regina Hines, testified that Hines was home on February 4, 1994, taking care of her. She stated that Hines only left home for five minutes to get milk earlier in the day. Hines' sister corroborated this alibi. Additionally, Clarence Foster, who arrived at the store during the robbery, testified that Hines was not the perpetrator.

The trial court found Hines guilty of all charges and sentenced him to life imprisonment without parole. Hines filed a direct appeal and several post-conviction petitions, all of which upheld Hines' convictions and sentence.

On December 29, 2022, Hines filed a motion for post-conviction DNA testing. The PCRA court denied Hines' motion on December 15, 2023, opining that Hines failed to meet the requirements of the post-conviction DNA testing statute.

On January 18, 2024, Hines filed a motion for reconsideration, attempting to cure the defects of his prior motion. Notably, in this motion, Hines specifically requested testing of the money, food stamps, and shell casing left at the scene of the crime. He stated that these items were all touched by the actual perpetrator. Hines asserted that DNA testing "will produce exculpatory evidence in this matter, in that [Hines] is 100% innocent of the crimes for which he [was convicted]." He did not separately explain how any exculpatory results from the DNA testing would establish his innocence. On March 1, 2024, the PCRA court denied Hines' motion, opining

that Hines failed to meet the *prima facie* requirement of the statute. Hines timely appealed.[2]

Hines presents one issue for review:

I.      Did the PCRA court abuse its discretion in failing to find that [Hines] had successfully satisfied the requirements of 42 Pa.C.S. § 9543.1 such that the lower court should have ordered DNA testing?

Hines' Brief at 2 (capitalization omitted).

On appeal, Hines analyzes how exculpatory DNA evidence from the items he wanted tested would prove his innocence, an explanation he did not provide to the PCRA court. He argues that, in light of the questionable witness identification at trial, any "Black, male DNA" other than his, "or even the absence of [Hines'] DNA" on the specified items, would support a finding of his actual innocence.

This Court reviews the denial of a motion for DNA testing to determine whether the petitioner satisfied the statutory requirements and whether the trial court committed an error of law. *Commonwealth v. Williams*, 35 A.3d 44, 47 (Pa. Super. 2011). We may affirm the denial of DNA testing if there is

---

[2] Hines appealed on March 21, 2024, which was within 30 days of the denial of his motion for reconsideration but more than 30 days after the denial of his first motion for DNA testing. Ordinarily, a motion for reconsideration does not toll the period to appeal; we will quash an appeal from the denial of reconsideration filed more than 30 days from the trial court's prior order. *See J.P. v. J.S.*, 214 A.3d 1284, 1289–90 (Pa. Super. 2019). Here, however, because the PCRA court treated Hines' motion for reconsideration as a new petition for DNA testing, we will review the merits of Hines' appeal.

- 4 -

any basis to support the trial court's decision, "even if we rely on different grounds" to do so. *Id.*

The law limits the circumstances under which a trial court can order DNA testing after a conviction. Relevant to this appeal, an applicant for post-conviction DNA testing must meet the "production" and "*prima facie*" requirements of the statute. An applicant must:

- explain how there is a reasonable possibility[3] that testing specific items would produce exculpatory evidence of his actual innocence. 42 Pa.C.S. § 9543.1(a)(6)(i).

- present a *prima facie* case that DNA testing of the items, assuming exculpatory results, would establish his actual innocence. 42 Pa.C.S. § (c)(3)(ii)(A).[4]

---

[3] For an applicant who pled guilty or who is not under state supervision, the statute requires a "reasonable probability." 42 Pa.C.S. § 9543.1(a)(6).

[4] The statute provides, in relevant part:

**(a) Motion.**--

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

\* \* \*

(6) The motion shall explain how, after review of the record of the applicant's trial, there is a reasonable possibility if the

*(Footnote Continued Next Page)*

We define "actual innocence" to require that newly discovered DNA evidence would "make it 'more likely than not that no reasonable juror would have found [the applicant] guilty beyond a reasonable doubt.'" *In re Payne*, 129 A.3d 546, 556 (Pa. Super. 2015) (*en banc*) (ultimately quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). We determine whether an applicant has satisfied his burden "on a case-by-case basis." *Id.* at 559. A "bald assertion" that an applicant's DNA would not be found on specified items is inadequate. *Commonwealth v. Heilman*, 867 A.2d 542, 546–47 (Pa. Super. 2005). An

---

applicant is under State supervision . . . that the testing would produce exculpatory evidence that would establish:

> (i) the applicant's actual innocence of the offense for which the applicant was convicted[.]

> \* \* \*

**(c) Requirements.**--In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested; [and]

> \* \* \*

(3) present a prima facie case demonstrating that the:

> (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

> (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

>> (A) the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

- 6 -

applicant must identify record evidence, beyond speculation, that DNA testing would produce exculpatory evidence of his innocence. **See Commonwealth v. Smith**, 889 A.2d 582, 585–86 (Pa. Super. 2005) (affirming the denial of DNA testing on a murder victim's fingernails where there was no evidence in the record that the victim scratched her assailant).

Here, as stated above, Hines had to satisfy the production and *prima facie* requirements of the statute: He had to explain how there was a reasonable possibility that testing specific items would produce exculpatory evidence of his innocence **and** present a *prima facie* case that DNA testing of the items, assuming exculpatory results, would establish his innocence. 42 Pa.C.S. § 9543.1(a)(6)(i), (c)(3)(ii)(A). The PCRA court reasoned that Hines failed the second, *prima facie* requirement. We conclude that Hines failed the first, production requirement.

As to the *prima facie* requirement, Hines did not cite 42 Pa.C.S. § 9543.1(c)(3)(ii)(A) in his motion for DNA testing or specifically set forth facts to present a *prima facie* case. Nevertheless, he did provide some support for how exculpatory results of the requested DNA testing would establish his actual innocence. In his motion, Hines asserted that the items to be tested were "found at the scene of the crime, and touched/handled by the actual perpetrator." In his appellate brief, Hines clarified that knowing that another person's DNA was on these items would make it less likely that a reasonable juror would have convicted him. **See Payne**, 129 A.3d at 556. For our

analysis, we thus assume that Hines met the *prima facie* requirement of 42 Pa.C.S. § 9543.1(c)(3)(ii)(A).

However, we determine that Hines failed to meet the production requirement of 42 Pa.C.S. § 9543.1(a)(6)(i). That is, he did not demonstrate a reasonable possibility that DNA testing of the money, food stamps, and shell casing would produce exculpatory results of his actual innocence. In his motion to the PCRA court, Hines relied only on assertions of his innocence to meet this requirement. He did not provide any record support of why the perpetrator's DNA would be on the money, food stamps, and shell casing. Nor have we found any support in the record for why there is a reasonable possibility that DNA testing of these items would produce exculpatory evidence, assuming for analytical purposes that Hines is innocent.

As to the money and food stamps, there is no record evidence that the police recovered the stolen items from the store or that they recovered any money or food stamps that were left in the store after being touched by the perpetrator. Maria Herrera testified (through an interpreter) that the perpetrator took the money that was handed to him, not that he dropped any. The record does not support that these items that might have been left in the store were ever in the possession of the police, let alone that they would have the perpetrator's DNA on them.

As to the shell casing, it is reasonable to infer that the shell casing the police observed on the floor was the same one that Maria Herrera saw come out of the gun. However, there is nothing in the record to suggest that the

perpetrator's DNA would be on a fired shell casing. A shell casing itself is not genetic material, and Hines does not explain how the perpetrator shooting a gun would leave his DNA on the discharged shell casing. As in **Smith**, Hines is merely speculating that there would be exculpatory DNA evidence on the items sought to be tested. Hines therefore fails the production requirement of 42 Pa.C.S. § 9543.1(a)(6)(i). Because a review of the record reveals no reasonable possibility that testing the money, food stamps, and shell casing would produce exculpatory evidence, the PCRA court did not err in denying Hines' motion.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2025