J-A27023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JONES | : | |
| | : | |
| Appellant | : | No. 2923 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005765-2022

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED DECEMBER 15, 2025**

Christopher Jones (Appellant) appeals from the judgment of sentence imposed following his jury conviction of persons not to possess firearms.[1] Appellant challenges the sufficiency and weight of the evidence supporting his conviction.  We affirm.

The trial court summarized the facts underlying Appellant's conviction:

On December 23, 2021, at approximately 5:21[ p.m.], Appellant, along with a co-conspirator, Nasiyf Crump[ (Mr. Crump)], were driving on the 1900 block of [East] Haz[z]ard Street, in the City and County of Philadelphia[ (the crime scene),] when they stopped, exited their vehicle[,] and walked a short distance. Almost immediately, [] gun[]fire ensued.  Mr. Crum[p] returned to the vehicle and drove [to a nearby gas station,] approximately three minutes away, and abandoned the car.  Appellant … was shot several times, [and remained, unconscious, at the scene]. When the police arrived within five (5) minutes, Appellant was found on the ground, in a pool of blood.  A loaded [] Smith and

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

Wes[s]on 9mm handgun [(the firearm)] was located within one (1) foot of Appellant. During the subsequent investigation, law enforcement discovered that Appellant was prohibited from possessing a firearm due to a prior conviction.

Appellant was arrested on February 23, 2022, and charged with one count each of the following: criminal conspiracy; aggravated assault; persons [not to] possess firearms; firearms not to be carried without a license; possessing instruments of crime; carrying firearms on public streets or public property in Philadelphia; simple assault; and recklessly endangering another person.[2] At trial, the Commonwealth moved forward only on the offense of persons [not to] possess[] firearm[s].

Appellant's jury trial commenced on January 22, 2024. The Commonwealth presented the following relevant witnesses: [Philadelphia] Police Officers [Gaby] Rodriguez [(Officer Rodriguez)], [Christian] Fernandez[ (Officer Fernandez)], and [Andre] Smerchansky[ (Officer Smerchansky)]; Detective [Thomas] Somogyi[ (Detective Somogyi)]; and [Parole] Agent [Gretalyn] Holden[ (Agent Holden)[3]]. Furthermore, [the parties] stipulated that Appellant was a person prohibited from possessing a firearm, at the time of the instant offense, due to a prior conviction for third-degree murder, [18 Pa.C.S.A. § 2502(c)]. *See* N.T., 1/22/24, at 34.

Trial Court Opinion, 12/12/24, at 1-2 (capitalization, punctuation, and citation modified; footnote in original omitted; footnotes added).

Officer Fernandez, the first responding officer, testified that he was dispatched to the crime scene following a report that there was "a person with

---

[2] 18 Pa.C.S.A. §§ 903(c), 2702(a)(1), 6106(a)(1), 907(a), 6108, 2701(a), 2705.

[3] The parties agreed to omit any reference to Agent Holden's work with parolees, and to only identify her as an "agent" employed by law enforcement. N.T., 1/22/24, at 7.

a gun …." N.T., 1/22/24, at 45-46. Officer Fernandez testified that upon arriving at the crime scene, he observed an individual[4] performing first aid on Appellant, who was unconscious and covered in blood. *Id.* at 48. Officer Fernandez explained that other police officers arrived to transport Appellant to the hospital, while Officer Fernandez secured the crime scene. *Id.* at 51-53.

Officer Fernandez indicated that law enforcement recovered the following evidence from the crime scene: "[surveillance video captured by] cameras at 1924 through 1935 East Hazzard[ Street], [the firearm], a ball cap, [a] cell phone, 12 [fired cartridge casings (FCCs)], … [one] projectile[, and] black socks." *Id.* at 47; *see also id.* at 95 (Detective Somogyi testifying that law enforcement recovered from the crime scene, *inter alia*, a "bullet projectile as well as a [bullet] fragment…."). Officer Fernandez described the location of the firearm as approximately "inches" to a foot away from the pool of blood that formed around Appellant. *Id.* at 54.[5]

Officer Smerchansky testified that he initially responded to the crime scene, but was subsequently dispatched to a nearby gas station at Frankford

---

[4] The individual providing aid to Appellant was not identified at trial and did not testify.

[5] The Commonwealth presented, as Exhibit 38B, Officer Fernandez's body-worn camera video, portions of which Officer Fernandez narrated. N.T., 1/22/24, at 49-54. The Commonwealth additionally presented, as Exhibit 38A, Officer Rodriguez's body-worn camera video, which depicted Officer Rodriguez's efforts to transport Appellant to the hospital. *Id.* at 39-41.

and Lehigh Avenues, which was an approximate two-to-three-minute drive from the crime scene. *Id.* at 61-62. There, Officer Smerchansky testified that he observed "a vehicle riddled with bullets[ (the vehicle),]" and "a massive pool of blood." *Id.* at 63; *see also id.* at 118-19 (Detective Somogyi agreeing that "it appears that all of the bullet strikes were in the rear of the vehicle.").

Detective Somogyi testified as the lead investigator of the shooting incident. Detective Somogyi explained that he obtained a search warrant for the vehicle after having it towed to a police impound lot. *Id.* at 73, 79. Detective Somogyi described the following, pertinent, items he seized from the vehicle during execution of the search warrant: (1) a black backpack; (2) "pieces of a firearm flashlight assembly"; (3) "paperwork addressed to [Appellant]"; (4) "a Rivers' Casino card assigned to [Appellant]"; (5) a "Springfield Model XD 9mm handgun[ (the Springfield handgun)] … loaded with ten live rounds"; (6) "prescription medicine for [Appellant]"; and (7) a "magazine for a Springfield XD9, that was loaded with 14 live rounds of 9mm[ ammunition], and … an additional extended magazine for [a] Springfield XD, containing six live 9mm rounds." *Id.* at 82, 84-86.[6]

_____

[6] Detective Somogyi testified that the Springfield handgun was recovered from the vehicle's glove compartment, and the ammunition "was recovered from the rear" of the vehicle. N.T., 1/22/24, at 84-85. Detective Somogyi testified that, concerning the remaining enumerated items, "[t]here may have been a mixture, [] if I'm reading the Property Receipt correctly, of being located in the [black] backpack, as well as [in] the center console." *Id.* at 86.

Detective Somogyi testified that "three cotton-tipped swabbed DNA samples" were collected from the firearm, but he did not obtain a comparison swab from Appellant. *Id.* at 100-01. Detective Somogyi explained that, "[i]n this instance[,] where [Appellant] ended up located [at the crime scene] was in close proximity to the [firearm, and] at the time I felt like we didn't need to have that comparison made." *Id.* at 102. *But see id.* at 112-13 (Detective Somogyi testifying that he believed that he had submitted the firearm for forensic testing).

Finally, Detective Somogyi testified that he recovered Ring doorbell camera footage (the Ring camera video), the contents of which the trial court summarized as follows:

> Detective Somogyi recovered [the] Ring camera video [] from the 1900 block of [East] Hazzard [Street]. The [Ring camera] video showed the [vehicle], at 5:21 [p.m.] on December 23, 2021, … driving away from the block. After the vehicle went out of frame, Detective Somogyi identified a silhouette of [a] person[] he identified as [Appellant], on the ground where the [firearm], FCCs, cell phone, and pool of blood were located.

Trial Court Opinion, 12/12/24, at 5-6.

Agent Holden testified, as the Commonwealth's final witness, concerning her familiarity with the vehicle and Appellant. N.T., 1/22/24, at 151. The prosecutor showed Agent Holden a photograph of the vehicle's license plate, and Agent Holden explained that, on a prior occasion, she observed Appellant "coming out of the vehicle with this license plate …." *Id.*; *see also id.* at 151-52 (Agent Holden confirming that she "took the time to notate the license

plate"). Agent Holden additionally identified Appellant in Exhibits 38A and 38B. *Id.* at 153-55.

At the conclusion of trial, the jury convicted Appellant of the above-described offense. On June 28, 2024, the trial court sentenced Appellant to 7 to 14 years in prison. Appellant timely filed a post-sentence motion challenging the discretionary aspects of his sentence, and the weight of the evidence supporting his conviction. The trial court denied Appellant's motion. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

1.) Was the evidence sufficient to sustain a conviction as to 18 Pa.C.S.[A.] § 6105[(a)(1)], [persons not to possess firearms], a felony of the first degree?

2.) Was the verdict on that same charge against the weight of the evidence presented during trial?

Appellant's Brief at 5.

Appellant first challenges the sufficiency of the evidence supporting his conviction.[7] Appellant contends that, because he "was never observed in actual possession of the [firearm,]" the Commonwealth was required to prove constructive possession, discussed *infra*. Appellant's Brief at 15. Appellant maintains that the trial record is devoid of any evidence that he had knowledge

_____

[7] Appellant preserved this issue in his timely, court-ordered Pa.R.A.P. 1925(b) concise statement. *See* Concise Statement, 11/26/24, ¶ 1.

of, or intent to exercise control over, the firearm. *Id.* at 16. Appellant further emphasizes that law enforcement failed to seek DNA testing of items recovered from the scene. *Id.* at 18. According to Appellant, "[a]n examination of the trial record demonstrates that the jury must have engaged in speculation and conjecture when deciding whether Appellant possessed the [firearm] …." *Id.* at 16-17.

The Commonwealth counters that

> [i]t is clear from the [Ring camera] video [] and surrounding circumstances that [Appellant] was involved in a shootout, during which he actually possessed a gun. From the [Ring camera video], [Appellant] can be seen leaving his car and walking out of view of [the] camera as he approached the car behind him. Immediately after, a dozen or more gunshots rang out. [Appellant] is then seen stumbling back into view of the doorbell camera and collapsing to the ground. [O]fficer [Fernandez] arrived within five minutes and found a gun and [FCCs] within one foot of [Appellant's] unconscious body. Thus, although the footage was not clear enough to see [Appellant] holding the gun, the circumstantial evidence established that he *had* been in actual possession of the gun—the gunfire began right after [Appellant] got out of his car and walked toward the car behind him, the FCCs established that the gun was fired, and the gun was found within inches of his body.

Commonwealth Brief at 9 (emphasis in original).

"Because a determination of the sufficiency of the evidence presents a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bettis*, ___ A.3d ___, 2025 WL 3009249, *4 (Pa. Super. filed Oct. 28, 2025) (citation and quotation marks omitted).

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the

benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

*Id.* (citations omitted); *see also Commonwealth v. Muhammad*, 335 A.3d 1047, 1051 (Pa. 2025) ("[T]he facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact[]finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." (citation omitted)).

To sustain a conviction for persons not to possess firearms, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm, and that he previously had been convicted of an enumerated offense[8] that prohibits him from, *inter alia*, possessing, using, or controlling a firearm. 18 Pa.C.S.A. § 6105(a)(1). "Possession is an act, within the meaning of this section, if the possessor knowingly procured or received

---

[8] As described above, the parties stipulated that Appellant had previously been convicted of third-degree murder, in violation of 18 Pa.C.S.A. § 2502(c). **See** N.T., 1/22/24, at 34; **see also** 18 Pa.C.S.A. § 6105(b) (providing that conviction of an offense under Section 2502 prohibits an individual from possessing a firearm).

the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." *Id.* § 301(c). "Possession [of a firearm] may be proven by circumstantial evidence." *In re R.N.*, 951 A.2d 363, 370 (Pa. Super. 2008) (citation omitted).

We have explained that "[p]ossession can be found by actual possession or constructive possession." *Commonwealth v. McIntyre*, 333 A.3d 417, 432 (Pa. Super. 2025) (citation omitted).

> When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the "legal fiction" of constructive possession. … [A] defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the power to control the contraband and the intent to exercise that control. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not, and may be established by the totality of the circumstances.

*Id.* (citations, brackets, and some quotation marks omitted; punctuation modified); *see also Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019) (explaining that, to prove constructive possession, "[t]he evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." (citation omitted)).

Instantly, the trial court rejected Appellant's sufficiency challenge, concluding that

> [t]he totality of the circumstances supports the jury's finding that Appellant was in constructive possession of the [firearm] located within one foot of his person. Not only did the jury have the

evidence that [] Appellant was in close proximity to the [firearm], but they also had evidence of FCCs at the location, an additional firearm and ammunition retrieved from Appellant's vehicle, which was bullet-ridden and contained a pool of blood. It was rational for the jury to deduce that Appellant had exercised dominion and control over the [firearm] during a gunfight, which resulted in him being shot.

….

[T]here is no legal precedent or statute requiring the Commonwealth to present DNA, fingerprints, or video footage as evidence. The jury can certainly consider the lack of such evidence, but it does not mean the verdict is legally insufficient without it. As set forth previously, under the totality of the circumstances, the evidence is sufficient to support the jury's finding that Appellant was in possession of the [firearm.]

Trial Court Opinion, 12/12/24, at 10-11.

The trial court's findings are supported by the record, and we agree with its legal conclusion. Upon review, viewed in the light most favorable to the Commonwealth, the evidence adduced at trial was sufficient to sustain Appellant's conviction of persons not to possess firearms. Appellant's sufficiency argument on appeal essentially repeats his trial theory of the case—a theory the jury rejected. *See Bettis*, 2025 WL 3009249, *4 ("[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." (citation omitted)).

Here, the Commonwealth presented sufficient evidence from which the factfinder could reasonably conclude that Appellant had recently been in actual physical possession of the firearm. *See Commonwealth v. Hewlett*, 189

A.3d 1004, 1009-10 (Pa. Super. 2018) (concluding evidence supported the defendant's conviction for persons not to possess firearms, where, during pursuit, police observed the defendant crouch between two vehicles and place an object on the ground, and later recovered a firearm from the area where the defendant was observed crouching). The evidence showed that moments after Appellant exited his vehicle—from which police later recovered firearm paraphernalia—numerous gunshots rang out. *See* Exhibit C-39a (Ring Camera Video), at 0:34-0:59; N.T., 1/22/24, at 82, 84-86. Within minutes, law enforcement arrived at the crime scene and found Appellant in close proximity to the firearm and FCCs. N.T., 1/22/24, at 54, 62.

We find no legal error in the trial court's conclusion that, "giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence," **Bettis**, 2025 WL 3009249, *4, "[i]t was rational for the jury to deduce that Appellant had exercised dominion and control over the [firearm] during a gunfight," Trial Court Opinion, 12/12/24, at 10. **See Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005) ("In DNA as in other areas, an absence of evidence is not evidence of absence. Furthermore, a [defendant] may be convicted on wholly circumstantial evidence[.]" (citation omitted)). Appellant's first issue merits no relief.

In his second issue, Appellant challenges the weight of the evidence supporting his conviction. Appellant's Brief at 18. Without citation to

authority,[9] Appellant argues that "the trial record is shocking for its exposure of the complete neglect of any meaningful investigation of the evidence recovered from the scene." *Id.* at 19. Appellant emphasizes the apparent failure of law enforcement to request DNA testing for any of the evidence collected at the crime scene, forensically examine the cell phone, or conduct a ballistics analysis to determine whether the FCCs were fired from the firearm or Springfield handgun. *Id.*

Initially, we note our standard of review:

Our standard of review in addressing weight of the evidence claims is whether the trial court has exercised an abuse of discretion by overriding or misapplying the law or rendering a judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. **Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.** Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence. Accordingly, for an appellant to prevail on a challenge to the weight of the

_____

[9] While Appellant cites a single case setting forth the standard of review of a weight challenge, he cites no relevant legal authority supporting the substance of his claim. *See* Appellant's Brief at 19; *see also* Pa.R.A.P. 2119(a) (providing that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). We could deem Appellant's second issue waived on this basis. *See **Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014) (concluding that appellant waived his claim by failing to adequately develop his argument or provide citation to and discussion of relevant authority). Nevertheless, we will address Appellant's weight claim.

evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Williamson***, 330 A.3d 407, 419 (Pa. Super. 2025) (quotation marks and internal citations omitted).

Instantly, the trial court rejected Appellant's weight claim, reasoning as follows:

> The jury was presented with a video showing Appellant's vehicle arriving at [the crime scene], where[,] within moments[,] a gunfight ensued. Appellant [was] identified by officers as the person in the video, who is later located on the ground, lying next to [the] firearm, FCCs and a pool of blood. The jury also heard evidence of Appellant's vehicle [being] riddled with bullet holes. The fact that the Commonwealth's witnesses did not provide additional evidence to establish Appellant was [in] possession of the [firearm], such as fingerprints or DNA tests, does not support a finding that the jury's verdict shocks the sense of justice. Additionally, what the police chose to do with a cell phone found at the scene does not either disprove any element of the offense nor Appellant's actions on scene. Accordingly, Appellant's [weight] challenge[ is] meritless, and no relief is due.

Trial Court Opinion, 12/12/24, at 12.

The trial court's findings are supported by the record, and its legal conclusion is sound. Appellant's complaints concerning law enforcement's purported failure to obtain additional evidence ignore that a defendant may be convicted solely on the basis of circumstantial evidence. ***See Heilman***, 867 A.2d at 547; ***see also Bettis***, 2025 WL 3009249, *4 ("[T]he Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence." (citation omitted)).

Here, the direct and circumstantial evidence highlighted above amply supported Appellant's conviction. Accordingly, we discern no abuse of the trial court's discretion in concluding that "the evidence [presented was not] so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." **Williamson**, 330 A.3d at 419 (citation omitted); **see also Commonwealth v. Watson**, 292 A.3d 562, 570 (Pa. Super. 2023) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court." (citation omitted)). Accordingly, Appellant's second issue entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025